IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HEMOSTEMIX, INC.,

                         Plaintiff;

              v.

ACCUDATA SOLUTIONS, INC. and ASPIRE
HEALTH SCIENCE, LLC,

                         Defendants.

Civil Action No. 20-881-RGA

<u>MEMORANDUM OPINION</u>

Matthew Denn, DLA PIPER LLP, Wilmington, DE; Christopher Oprison, Ardith Bronson, DLA PIPER LLP, Miami, FL, attorneys for Plaintiff.

R. Karl Hill, SEITZ, VAN OGTROP & GREEN, P.A., Wilmington, DE; Jason J. Curliano, Christopher Ohlsen, BUTY & CURLIANO, Oakland, CA, attorneys for Defendant Accudata Solutions, Inc.

Kelly E. Farnan, Blake Rohrbacher, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Daniel Buchholz, HOLLAND & KNIGHT LLP, Tampa, FL, attorneys for Defendant Aspire Health Science, LLC.

March 30, 2021

1

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court are Defendant Accudata's Motion to Dismiss or Stay (D.I. 43) and

Defendant Aspire's Motion to Dismiss or Stay (D.I. 41). I have considered the parties' briefing.

(D.I. 42, 44, 45, 46, 48, 49).

## I.      BACKGROUND

Plaintiff Hemostemix filed suit against Defendant Accudata seeking a declaratory

judgment and specific performance under the Hemostemix-Accudata Consulting Agreement

("Consulting Agreement") and alleging breach of contract. (D.I. 1 at 10-14). Plaintiff is a

clinical-stage biotechnology company and Accudata is a biostatistics firm. This action concerns

clinical trial data and the Midpoint Analysis of Plaintiff's clinical trials for its product ACP-01.

Defendant Aspire, a Contract Research Organization (CRO), filed a motion to intervene (D.I.

23), which the Court granted (D.I. 38).

This is not the first time that Plaintiff and Aspire have been entangled in litigation. Aspire

filed suit against Hemostemix in the Circuit Court of Florida on January 28, 2020 ("the Florida

Action"). (D.I. 24-5, Exh. F at 2 of 190). That action concerns agreements between Aspire and

Hemostemix, specifically, the enforceability of the parties' Amended License Agreement. (*Id.* at

9-10 of 190). In the Florida Action, Aspire seeks declaratory relief that the Amended License

Agreement is enforceable and specific performance under the agreement. (*Id.* at 10-11 of 190).

Hemostemix filed suit against Aspire on May 27, 2020 in Alberta, Canada. (D.I. 42-2,

Exh. B at 6 of 117). Hemostemix sought an Order for Replevin for the clinical trial data

Midpoint Analysis or, in the alternative, an injunction for the return of this data. (*Id.* at 7-8 of

117).  The Alberta court dismissed the case on June 18-19, 2020, finding that there was no "real

and substantial connection to Alberta." (*Id.* at 21, 28 of 117). Hemostemix appealed on June 24,

2020 (D.I. 42-3, Exh. C at 2, 4 of 5), and thereafter stated in its briefing that the "Alberta Action recently ended without a decision on the merits." (D.I. 48 at 4).

In this case, Plaintiff seeks a declaratory judgment of its rights under the Consulting Agreement and specific performance from Accudata under the agreement, particularly the return of Plaintiff's property and for Accudata not disclose the proprietary information to any other parties. (D.I. 36 at 30-31). Plaintiff also alleges tortious interference with contractual relations, tortious interference with prospective economic advantage, conversion, and fraud against Aspire. (*Id.* at 32-34, 35-36). Against both Defendants, Plaintiff alleges civil conspiracy, violation of the Defend Trade Secrets Act ("DTSA"), and violation of the Delaware Uniform Trade Secret Act ("DUTSA"). (*Id.* at 35, 37-42).

## II.   MOTIONS TO STAY

Defendants argue that the *Colorado River* abstention doctrine should apply. (D.I. 42 at 7-10; D.I. 44 at 4-8). In the alternative, Defendants assert that the Court should exercise its inherent authority to stay this action until resolution of the Florida Action. (D.I. 42 at 1; D.I. 44 at 4).

### A.   *Colorado River* Abstention

Aspire argues for stay or dismissal under the *Colorado River* abstention doctrine, while Accudata only argues for a stay. (D.I. 42 at 1; D.I. 44 at 4). Defendants argue that *Colorado River* abstention is appropriate as the Florida Action and this action are parallel cases involving substantially similar issues. (D.I. 42 at 5; D.I. 44 at 7-8). Defendants assert that the difference in causes of action between the suits does not prevent them from being parallel. (D.I. 42 at 5; D.I. 44 at 8). Defendants further contend that the balance of other factors weighs in favor of abstention. (D.I. 42 at 6; D.I. 44 at 9). Defendants offer similar arguments as to why abstention is proper based on other factors: the Florida court was the first and a convenient forum to receive

the dispute and that a stay would avoid piecemeal and vexatious litigation. (D.I. 42 at 6-8; D.I. 44 at 9-10).

Plaintiff contends that *Colorado River* abstention should not be applied here. (D.I. 45 at 4). Plaintiff argues that this action and the Florida Action are not parallel as the Florida Action does not involve the issue of ownership of the clinical trial data and a resolution in the Florida Action will not dispose of the claims presented in this action. (*Id.* at 4-5). Plaintiff also asserts that the balance of factors does not support abstention as Delaware is a convenient forum, there is no risk of piecemeal litigation, the "order of jurisdiction" favors Delaware, and the litigation is not vexatious. (*Id.* at 6-8).

"Under the *Colorado River* abstention doctrine, a federal court may exercise its power to stay or dismiss an action on the sole ground that a concurrent similar action exists in a state court which may resolve the controversy between parties to the federal action." *Robinson v. Ruiz*, 772 F. Supp. 212, 214 (D. Del. 1991). Application of *Colorado River* abstention requires a two-step process. First, the court must determine if the federal and state actions are parallel. *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997). "Suits are parallel if 'substantially the same parties litigate substantially the same issues in different forums.'" *Quinn v. AVCO Corp.*, 2017 WL 10056803, at *1 (D. Del. May 19, 2017) (quoting *Horack v. Minott*, 1995 WL 330730, at *5 (D. Del. May 26, 1995)). If the actions are not parallel, then the court does not have the authority to abstain. *Ryan,* 115 F.3d at 196. If the actions are parallel, the court must then determine whether abstention is appropriate by analyzing certain factors enumerated in *Colorado River* and its progeny. *Id.*

I agree with Plaintiff that *Colorado River* abstention is not appropriate here. The Florida Action, while involving certain contracts between Hemostemix and Aspire, reflects only a small

part of the overall dispute between the parties. That action concerns the enforceability of the Amended License Agreement and seeks specific performance and a declaratory judgment thereunder. (D.I. 24-5, Exh. F at 9-11 of 190). This action involves the Hemostemix-Accudata Consulting Agreement and will likely include evaluation of the Accudata-Aspire Contractor Agreement and the agreements between Hemostemix and Aspire. There are different agreements at issue in both cases, which raise different issues.

While the parties are "substantially the same," as Hemostemix and Aspire are involved in both, the issues are not "substantially the same." The Florida Action only concerns the validity and enforcement of the Amended License Agreement between Hemostemix and Aspire. It does not raise any allegations against Accudata and its alleged breach of the Consulting Agreement nor does it allege any tortious behavior or violations of the DTSA and DUTSA. There are different agreements and different issues at play in this action.

Thus, resolution of the Florida Action will not resolve the controversies presented in this action. The Florida Action will resolve the dispute between Plaintiff and Aspire regarding the enforceability and validity of their License Agreements. However, resolution of the Florida Action will not resolve Plaintiff's claims against Accudata pursuant to their Consulting Agreement or Plaintiff's claims against both Defendants. It is inappropriate to apply *Colorado River* abstention in this case, as the Florida Action will not "resolve the controversy between parties to the federal action" *Robinson*, 772 F. Supp. at 21. Therefore, Aspire's motion to stay or dismiss and Accudata's motion to stay are denied on this ground.

### B. Inherent Authority

Defendants also assert that the Court, using its inherent authority, should stay this action until the Florida Action is resolved. (D.I. 42 at 18; D.I. 44 at 10). A decision to grant a motion to

stay is within the discretion of the district court. *See Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). In exercising this discretion, courts evaluate three factors: "(1) whether a stay will unduly prejudice or present a clear tactical advantage to the non-moving party, i.e., the balance of harms; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay will promote judicial economy, e.g., how close to trial has the litigation advanced." *Husqvarna AB v. The Toro Co.*, 2016 WL 5213904, at *1 (D. Del. Sept. 20, 2016) (citing *Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 737-38 (3d Cir. 1983)).

The parties dispute whether a stay will cause undue prejudice. Accudata argues that it would be burdened by the litigation if it is not stayed. (D.I. 42 at 11). Accudata asserts that it is a minor participant in this litigation and absent a stay, it will be brought into arduous and costly discovery pertaining to issues in the Florida Action. (*Id.* at 11-12). Accudata also contends that a stay would not give it a tactical advantage over Plaintiff, as adjudication of the enforceability of the Amended License Agreement is necessary to understand the parties' rights in this case. (*Id.* at 12). Aspire argues that there is no undue prejudice or clear tactical disadvantages because this case is in the early stages of litigation. (D.I. 42 at 9).

Plaintiff argues that a stay would cause it prejudice as it would continue to delay full access to its data and would prolong its ability to finish conducting the clinical trials and moving forward with ACP-01. (D.I. 45 at 9). Plaintiff reiterates that the Florida Action does not involve a dispute over the ownership of the clinical trial data and that a stay would delay the determination of the issues in this case. (*Id.* at 9-10; D.I. 48 at 15-16). Plaintiff also contends that Accudata would not be burdened by litigation in the Florida Action, as Accudata is not a party to that action. (D.I. 48 at 16).

Granting a stay could unduly prejudice Plaintiff. Plaintiff has argued that the information it seeks is important to facilitate the remainder of its clinical trials. (D.I. 45 at 9-10). As discussed above, the issues in this case are different from those being resolved in the Florida Action. A stay would cause Plaintiff to have to wait until the resolution of the Florida Action to begin inquiring into the other, different issues in this case. As a stay could prejudice Plaintiff by causing an unnecessary delay in a determination of its rights under the Consulting Agreement and its access to the clinical trial data and Midpoint Analysis, this factor also weighs against granting a stay.

Defendants assert that a stay will streamline the issues in this case. (D.I. 42 at 9; D.I. 44 at 11). Defendants argue that the same data is at issue in all of the actions and that the issues in this case require a determination of the enforceability of the Amended License Agreement, which is at issue in the Florida Action. (D.I. 42 at 9; D.I. 44 at 11). Plaintiff argues that a stay is improper as Accudata is not a party to the Florida Action and the Florida Action does not involve a dispute over ownership of the clinical trial data or the Midpoint Analysis. (D.I. 48 at 8). Plaintiff also contends that a stay will not simplify the issues in question, as the Florida Action pertains to enforceability of license agreements while this action seeks return of Plaintiff's property, irrespective of whether the license agreements are enforced. (D.I. 45 at 10).

A stay will not meaningfully simplify the issues in this case. The Florida Action will probably provide clarity as to the relationship between Aspire and Hemostemix, as that action concerns the licensing agreements between the parties. Such clarity might illuminate or facilitate the resolution of some issues in this case, but is unlikely to simplify the issues in dispute. Regardless of what happens in the Florida Action, I will still need to resolve the issues in this suit pertaining to the Consulting Agreement between Plaintiff and Accudata and Plaintiff's other

claims against Defendants. As a stay will not likely simplify the issues in this case, this factor weighs against granting a stay.

Defendants argue that a stay will promote judicial economy as the enforceability of the Amended License Agreement needs to be resolved in the Florida Action in order to understand the issues in this case. (D.I. 42 at 9; D.I. 44 at 11). Plaintiff counters that granting a stay would not promote judicial economy as both this action and the Florida Action are in the early stages of litigation. (D.I. 45 at 10).

I agree with Plaintiff. Both this action and the Florida Action are in the early stages of litigation. And, as there are different issues in each of the cases, it would not be beneficial to judicial economy to stay this action while the Florida Action is pending. The issues in this case will still need to be resolved after completion of the Florida Action, so a stay would not promote judicial economy.

For these reasons, Defendants' motions to stay pursuant to the Court's inherent authority are denied.

## III.   MOTIONS TO DISMISS

Defendants move to dismiss the complaint for failure to state a claim. Both Defendants contend that certain of Plaintiff's common law claims are preempted by the DUTSA. (D.I. 42 at 1; D.I. 44 at 4). Additionally, Aspire moves to dismiss all counts against it for failure to state a claim. (D.I. 42 at 13-20).

### A.  Legal Standard

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  Rule 8(a) requires "a short and plain statement of the

claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

### B. Analysis

#### 1. Preemption under the DUTSA

Aspire argues that Plaintiff's claims of tortious interference with contractual relations, tortious interference with prospective economic advantage, conversion, and fraud should be dismissed as they are preempted by the DUTSA. (D.I. 42 at 10). Both Defendants move to dismiss Plaintiff's civil conspiracy claim for preemption by the DUTSA. (*Id.*; D.I. 44 at 12-13). Plaintiff argues that its common law claims are not preempted as the claims do not require proof of all facts necessary for the misappropriation of trade secrets claims under the DUTSA. (D.I. 45 at 11).

The DUTSA "displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secret." 6 Del. C. § 2007(a). "A claim will be preempted if it is 'grounded in the same facts which purportedly support the

Misappropriation of Trade Secrets claim.'" *Ethypharm S.A. France v. Bentley Pharms., Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005) (quoting *Savor*, 2001 WL 541484, *4 (Del. Super. Apr. 24, 2001)). "A common law claim is 'grounded in the same facts' as a trade secret claim if the same facts are used to establish all the elements of both claims." *Accenture Global Services GMBH v. Guidewire Software, Inc.*, 631 F. Supp. 2d 504, 508 (D. Del. 2009). In other words, "if the success of the common law claim does not depend on the success of the trade secrets claim, that is, if a plaintiff need not prove all facts underlying the trade secrets claim in order to prove the common law claim, then the common law claim is not 'grounded in the same facts' and is not preempted." *Id.* Often, whether a common law claim is "'grounded…in the same facts' as its trade secret claim often cannot be determined at the motion to dismiss stage." *Id.*

While the DUTSA does preempt conflicting tort and other remedies for misappropriation of trade secrets, it only does so where the common law claims are "grounded in the same facts" as a trade secret claim. At this stage of litigation, it is difficult to assess whether the common law claims are grounded in the same facts as the DUTSA claims. *See id*. Based on Plaintiff's allegations, its common law claims could succeed without proof of all of the facts underlying the trade secret claim.

For Count III and IV, Plaintiff's allegations that Aspire "directing or instructing Accudata" to take certain actions do not arise out of a misappropriation of trade secrets. (*See* D.I. 36 at 32-33). Plaintiff's allegations supporting Count V, including how Aspire "instructed Accudata to transfer the midpoint analysis report to Aspire" and "directed Accudata to effectively destroy the Clinical trial data or even return it to Aspire to the exclusion of Hemostemix, the rightful owner" (*id.* at 34), do not depend on any finding that Aspire misappropriated any trade secrets. Similarly, for Count VII, Plaintiff's allegations that Aspire's

misrepresentations caused Accudata to enter into a new contract and using that contract to prevent Accudata from transmitting information to Hemostemix (*id.* at 36-37), are not dependent on Aspire's misuse of confidential information. Lastly, for Count VI, Plaintiff alleges that Aspire "instructed Accudata not to release the Clinical Trial data or the midpoint analysis report to Hemostemix." (*Id.* at 35). This allegation does not depend on any finding that Aspire misappropriated any trade secrets. As Plaintiff's common law claims do not depend on the success of its misappropriation of trade secrets claim, they are not preempted by the DUTSA.

If the claims, after being developed, are "grounded on the same facts as the misappropriation claim, it will be displaced by the DUTSA." *Ethypharm S.A. France*, 388 F. Supp. 2d at 435. Defendants' motions to dismiss are denied as to their preemption arguments.

### 2.  Failure to State a Claim

Aspire moves to dismiss Counts III to VIII and X for failure to state a claim.

#### a.  Tortious Interference with Contractual Relations (Count III)

Aspire contends that Plaintiff fails to state a claim for tortious interference with contractual relations as Plaintiff fails to allege breach of the contract between Accudata and Plaintiff. (D.I. 42 at 13). Specifically Aspire argues that Plaintiff fails to allege facts showing that Accudata breached the contract, as the Amended Complaint does not allege that Plaintiff provided the final clinical trial data to Accudata under the Consulting Agreement. (*Id.).* Plaintiff argues that it has stated a claim as it has alleged that Accudata breached the Consulting Agreement in multiple ways. (D.I. 45 at 16).

To state a claim for tortious interference with contractual relations, "There must be (1) a contract, (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury." *Aspen*

*Advisors LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1266 (Del. 2004) (citation omitted).

I agree with Plaintiff. Plaintiff's complaint sufficiently alleges that there was a breach of the Hemostemix-Accudata Consulting Agreement. As alleged in the Amended Complaint (D.I. 36 at 17), the Consulting Agreement provides that upon termination of the agreement or at the Plaintiff's earlier request, Accudata "will immediately deliver to [Hemostemix] . . . any and all [Hemostemix] property, including but not limited to Confidential Information…" (D.I. 36-1, Exh. 1 at 5 of 344). Plaintiff also alleges that it was unable to get its data and records back from Accudata despite multiple requests. (D.I. 36 at 18-19). The Amended Complaint alleges the different ways that Accudata breached the agreement. (*See, e.g.*, *id.* at 32). Plaintiff's allegations sufficiently plead a breach of the Consulting Agreement and thus a claim for tortious interference with contractual relations. Aspire's motion to dismiss is denied as to Count III.

### b. Tortious Interference with Prospective Economic Advantage (Count IV)

Aspire argues that Plaintiff fails to state a claim on this count as Plaintiff has not sufficiently alleged a reasonable expectancy of a business relationship. (D.I. 42 at 15). Aspire contends that Plaintiff's allegations of its expectant relationship with the "market" is not enough to establish a tortious interference claim. (*Id.*). Plaintiff argues that to establish a tortious interference claim it is not necessary to identify parties by name and that courts in this District have permitted broader allegations regarding prospective customers. (D.I. 45 at 17).

To state a claim for tortious interference with prospective economic advantage, a plaintiff must establish: "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages." *Kuroda v. SPJS Holdings, LLC*, 971 A.2d 872, 886-887 (Del. Ch. 2009). A "plaintiff must do more than offer 'vague statements about unknown customers'" or allege "a 'nebulous,

unascertainable class' of business relationships.'" *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122-23 (Del. Ch. 2017) (citations omitted).

In this case, Plaintiff has done more than "allege a nebulous unascertainable class of business relationships." Plaintiff has alleged that Aspire interfered with its plans to introduce ACP-01 to the "market." (D.I. 36 at 33). The "market" would be those with diseases that could be treated with ACP-01 (*id.* at 1); a "market" that is in existence, based on the 42 participants in Plaintiff's clinical trials. (*Id.* at 2). This is not an "unascertainable class" as Plaintiff can identify the group of potential customers with whom Aspire's actions have interfered.

Other courts have permitted claims of tortious interference with prospective economic advantage where a plaintiff identified a "market" of customers. In a suit involving a generic drug market, the district court determined that the "allegation that [the defendant] brought a sham patent infringement suit against [the plaintiff] with the purpose of keeping it out of the generic [drug] market [was] sufficient to state a claim for tortious interference with prospective business advantages." *SmithKline Beecham Corp. v. Apotex Corp.*, 383 F. Supp. 2d 686, 704 (E.D. Pa. 2004). Another court in this District has determined that tortious interference claims could proceed where the plaintiffs did not identify specific relationships that had been disrupted. *Abbott Labs. v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408, 433 (D. Del. 2006).

Plaintiff has sufficiently alleged the reasonable probability of a business opportunity, and thus Aspire's motion to dismiss Count IV is denied.

### c. Conversion (Count V)

Aspire argues that Plaintiff fails to state a claim for conversion, as Plaintiff does not allege that Aspire deprived it of the use or possession of the clinical trial data or the Midpoint Analysis. (D.I. 42 at 15). Aspire also contends that the conversion claim fails as it arises from a

breach of contract and Plaintiff does not allege that Aspire violated a duty in tort. (*Id.* at 15-16). Plaintiff counters that its conversion claim does not arise solely from a breach of contract claim and that a conversion claim may be brought alongside a contract claim where a plaintiff alleges a breach of a tort duty independent of contractual duties. (D.I. 45 at 17).

Under Delaware law, to state a claim for conversion, a plaintiff "must establish a property interest in the converted goods, the right to possess the goods, and damages." *J.C. Trading Ltd. v. Wal-Mart Stores, Inc.*, 947 F. Supp. 2d 449, 459 (D. Del. 2013). "Even an intentional, knowing, wanton, or malicious action by the defendant will not support a tort claim if the plaintiff cannot assert wrongful conduct beyond the breach of contract itself." *Data Mgmt. Internationale, Inc. v. Saraga*, 2007 WL 2142848, at *3 (Del. Super. Ct. July 25, 2007). However, "the obligation not to misappropriate another's property arises from general common law tort principles and exists independent of any contractual relationship between the parties." *Id.*

Plaintiff has sufficiently alleged that Aspire deprived it of use and possession of the Midpoint Analysis and the underlying clinical trial data as Aspire has not transmitted the data and instructed Accudata not to transmit that information or the Midpoint Analysis. (D.I. 36 at 18, 28). Plaintiff has also sufficiently alleged wrongful conduct independent of any contractual duties. Among other allegations, Plaintiff alleges that Aspire "directed Accudata to effectively destroy the Clinical Trial data or even return it to Aspire to the exclusion of Hemostemix," and "offered Accudata compensation…equivalent to more than 10 times the contractual price in the Hemostemix Consulting Agreement." (D.I. 36 at 34). These alleged wrongful actions did not arise out of any contract between Hemostemix and Aspire, and are sufficient to establish Plaintiff's claim for conversion. Aspire's motion to dismiss is denied as to Count V.

### d.  Civil Conspiracy (Count VI)

Aspire asserts that Plaintiff's civil conspiracy claim fails as Plaintiff does not offer more than a conclusory allegation that Aspire and Accudata conspired to deprive Plaintiff of the clinical trial data and midpoint analysis. (D.I. 42 at 16). Aspire also argues that this claim arises from a breach of contract which is not an underlying wrong that can give rise to a civil conspiracy claim. (*Id.* at 17). Aspire further contends that this claim fails as it must be predicated on an underlying wrong and Plaintiff has not adequately alleged underlying claims under the DTSA or the DUTSA. (*Id.*). Plaintiff contends that it has alleged sufficient facts to state a claim for civil conspiracy. (D.I. 45 at 18). Plaintiff argues that the claim is based on allegations that Aspire and Accudata exchanged emails and Aspire instructed Accudata not to release the data to Plaintiff. (*Id.*).

To plead a civil conspiracy claim under Delaware law, a plaintiff must allege "(1) A confederation or combination of two or more persons; (2) An unlawful act done in furtherance of the conspiracy; and (3) Actual damage." *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149-50 (Del. 1987). Taking the allegations in the light most favorable to Plaintiff, Plaintiff has stated a claim for civil conspiracy.

First, Plaintiff has alleged a confederation between Aspire and Accudata. Plaintiff describes both a contract between the parties, as well as emails exchanged between Aspire and Accudata discussing the clinical trial data and what Accudata should do with it. (D.I. 36 at 27, 35).

Plaintiff also sufficiently pleads that this claim is predicated on an underlying wrong. Plaintiff's allegations of civil conspiracy do not arise from a breach of contract. Rather, Plaintiff's claim arises from other unlawful acts. Plaintiff alleges that "Aspire directed Accudata

15

to enter into a separate Consulting Agreement with Aspire. . . and Aspire offered Accudata 10 times its typical contract price as a bribe to have Accudata divert its loyalties to Aspire at the expense of Hemostemix." (*Id.* at 27). Further, Plaintiff alleges that Aspire and Accudata "exchanged emails, in which agent(s) of Aspire instructed Accudata not to release the Clinical Trial data or the midpoint analysis report to Hemostemix, despite a contractual and regulatory requirement to do so," and that in "furtherance of the conspiracy, Accudata produced the Clinical Trial Data and midpoint analysis report only to Aspire and withheld same from Hemostemix." (*Id.* at 35). Plaintiff also claims that Aspire instructed Accudata to destroy all of the clinical trial data and copies of the Midpoint Analysis, or to return them to Aspire. (*Id.* at 28-29). These alleged wrongful acts do not arise out of a breach of a contract. Further, Plaintiff has sufficiently plead violations of the DTSA and the DUTSA, s*ee* Section III.B.2.f, *infra*, which meets the pleading standard as an underlying wrong upon which civil conspiracy can be predicated. For these reasons, Aspire's motion to dismiss Count VI is denied.

### e.   Fraud (Count VII)

Hemostemix's fraud count is based on allegations of misrepresentations by Aspire to Accudata.  Aspire argues that Plaintiff has not stated a claim for fraud, as Aspire had no duty to disclose any facts to Accudata. (D.I. 42 at 18). Aspire also contends that the fraud claim fails, as Plaintiff does not allege that Aspire intended to induce Plaintiff into doing anything nor was Plaintiff induced into doing anything. (*Id.*). Aspire moves for this count to be dismissed with prejudice. (*Id.*). Plaintiff counters that it has pleaded facts to state a claim for fraud, as it alleges that Aspire made a fraudulent statement to Accudata and that Accudata relied on those statements. (D.I. 45 at 18-19).

To state a claim for fraud, a plaintiff must allege that: "(1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance." *Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 400 (D. Del. 2016).

Plaintiff has not stated a claim for fraud.

Plaintiff's allegations of fraud are grounded in Aspire's alleged misrepresentations to Accudata. (D.I. 36 at 36-37). Plaintiff alleges, "Dr. Jacobs intended that Milikien [Accudata's President] would rely on Jacobs' direction and transition to Aspire the Clinical Trial data and analysis in its possession belonging to Hemostemix." (*Id.* at 36). Plaintiff also claims that Kyle Makofka, "purporting to act on behalf of Hemostemix, instructed Milikien to transfer control over the midpoint analysis and all Clinical Trial data to Aspire," and "directed Milikien in or about late January 2020 to enter into a new consulting agreement with Aspire, backdated to mid-November 2019." (*Id.*). These allegations do not involve any inducement from Aspire to get Plaintiff to act or refrain from acting. The allegations also do not show that Plaintiff acted in justifiable reliance on the representation. Plaintiff does not allege any facts to support that Aspire intended to induce Plaintiff to act or that Plaintiff acted in justifiable reliance on Aspire's representations. For these reasons, Plaintiff has not stated a claim for fraud and Aspire's motion to dismiss Count VII is granted. However, Aspire's motion to dismiss is granted without prejudice, as there is no argument that amendment would be futile.

### f.   Violations of DTSA (Count VIII) and DUTSA (Count X)

Aspire contends that Plaintiff fails to allege that Aspire misappropriated Plaintiff's purported trade secrets, as Plaintiff has not alleged that Defendants acquired the clinical trial data through improper means. (D.I. 42 at 19-20). Specifically, Aspire argues, "Failing to [turn over] information that one rightfully obtained and possesses does not fit within any definition of the term 'misappropriation.'" (*Id.* at 20). Plaintiff counters that it has sufficiently alleged that Aspire wrongfully obtained and used its trade secrets, including Aspire's improper acquisition of the Midpoint Analysis and its actions to obstruct Plaintiff's access to the clinical trial data. (D.I. 45 at 20).

I agree with Plaintiff. Under both the DTSA and the DUTSA, "misappropriation" means: "(a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (b) Disclosure or use of a trade secret of another without express or implied consent" in certain circumstances. 18 U.S.C. § 1839(5); 6 Del. C. § 2001(2). "Improper means," under both statutes, "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6); 6 Del. C. § 2001(1).

Plaintiff has sufficiently alleged that Aspire acquired the clinical trial data through improper means. Plaintiff alleges, "Unbeknownst to Mr. Smeenk or anyone else at Hemostemix. . . , Aspire directed that Accudata enter into a separate Consulting Agreement with Aspire. . . to direct the course of the midpoint analysis and control the underlying release and of and access to the Clinical Trial data." (D.I. 36 at 27). Plaintiff also claims, "Aspire offered Accudata **10 times** its typical contract price as a bribe." (*Id.*). Further, Plaintiff alleges that Aspire's agents directed Accudata not to send any of the data or the Midpoint Analysis to Plaintiff and threatened a

lawsuit if the information was transmitted. (*Id.* at 28). Plaintiff also alleges that Aspire instructed Accudata to return to Aspire or to destroy all of the clinical trial data and Midpoint Analysis reports in its possession. (*Id.* at 29). Plaintiff has alleged multiple "improper means" including bribery and inducement of a breach of a duty.

As Plaintiff has sufficiently alleged a violation of the DTSA and the DUTSA, Aspire's motion to dismiss Counts VIII and X is denied.

## IV.   CONCLUSION

Defendants' motions to stay (D.I. 41, 43) are denied. Defendant Accudata's motion to dismiss (D.I. 43) is denied. Defendant Aspire's motion to dismiss (D.I. 41) is granted without prejudice as to Count VII and denied as to all other counts.