IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

HEMOSTEMIX INC.,

                              Plaintiff;

          v.                                         Civil Action No. 20-881-RGA

ACCUDATA SOLUTIONS, INC. and ASPIRE
HEALTH SCIENCE, LLC,

                              Defendants.

MEMORANDUM OPINION

Matthew P. Denn, DLA PIPER LLP, Wilmington, DE; Christopher Oprison, DLA PIPER LLP, Miami, FL;

     Attorneys for Plaintiff.

Blake Rohrbacher, Kelly E. Farnan, Valerie A. Caras, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Daniel L. Buchholz, HOLLAND & KNIGHT LLP, Tampa, FL;

     Attorneys for Defendant Aspire Health Science, LLC.

February 28, 2022

ANDREWS, U.S. DISTRICT JUDGE:

Before me is Plaintiff Hemostemix's motion to dismiss Defendant Aspire's counterclaim. (D.I. 78). I have considered the parties' briefing. (D.I. 79, 80, 82). For the following reasons, Hemostemix's motion is GRANTED.

## I.    BACKGROUND

Hemostemix is a biotechnology company seeking to bring ACT-01, an autologous stem cell therapy, to market. (D.I. 36 ¶¶ 8, 12). Hemostemix hired Aspire, the intervening defendant and counterclaimant, to perform the clinical trials. (*Id.* ¶ 44). Both Hemostemix and Aspire contracted with the other Defendant, Accudata, to perform statistical analysis of the clinical trial data. (D.I. 36 ¶¶ 66–67; D.I. 70 ("Counterclaim") ¶ 12). The clinical trial reached its midpoint and Accudata analyzed the data in a Midpoint Analysis. (D.I. 36 ¶¶ 62, 79). Hemostemix brought the present suit to obtain the data and the Midpoint Analysis from Accudata. (D.I. 36 ¶¶ 131–39). Aspire intervened. (D.I. 23, 38). On July 21, 2020, I ordered that the data and Midpoint Analysis be preserved pending litigation. (D.I. 30).

Aspire's counterclaim accuses Hemostemix of tortious interference with the Aspire-Accudata Contractor Agreement. (Counterclaim ¶¶ 27–34). Section 10 of the Aspire-Accudata Contractor Agreement states, "[Accudata] shall not retain any copies [of the clinical trial data] without the proper written permission of [Aspire]." (D.I. 24-2, Ex. C at 3). In June 2020, Hemostemix demanded that Accudata turn over the clinical trial data and the Midpoint Analysis to Hemostemix. (Counterclaim ¶ 21).[1] Accudata refused. (*Id.* ¶ 24). Subsequently, on an

---

[1] The Counterclaims are not as precise as Hemostemix's Amended Complaint in identifying the dates of the relevant events. Hemostemix says it asked for the Midpoint Analysis on June 15, 2020, again on June 17th, and through counsel on June 19th, but Accudata refused to provide it. (D.I. 36 ¶¶ 78, 82, 91).

unspecified date, Aspire demanded that Accudata destroy or return the clinical trial data to Aspire. (*Id.* ¶ 23). Accudata again refused. (*Id.*). Aspire alleges that Hemostemix's demand for the clinical trial data caused Accudata to refuse Aspire's request in breach of the Aspire-Accudata Contractor Agreement. (*Id.* ¶ 31). On June 29, 2020, Hemostemix sued Accudata. (D.I. 1).

## II.   LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). There must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

To state a claim for tortious interference with contractual relations, "There must be (1) a contract, (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury." *Irwin &*

center3

*Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987) (citing Restatement (Second) of Torts § 766 (1979)).[2]

## III.   DISCUSSION

Hemostemix argues that Aspire has failed to plead lack of justification or injury.  (D.I. 79).  I agree.

### A.  Lack of Justification

Tortious interference requires that the interference be without justification.  Aspire's counterclaim alleges the following conduct is "unjustifiabl[e]"

- "directing and instructing Accudata to breach its contractual obligations"
- "making false statements concerning Aspire and the Amended License Agreement"
- "misrepresenting the enforceability of the Aspire-Accudata Contractor Agreement and the Hemostemix-Accudata Consulting Agreement"
- "filing claims against Aspire and Accudata"

(Counterclaim ¶ 31).  In addition to these allegations in Aspire's counterclaim, I can consider documents integral to those allegations.  *Mele v. Fed. Rsrv. Bank of New York*, 359 F.3d 251, 256 n.5 (3d Cir. 2004).  The Hemostemix-Accudata Consulting Agreement requires Accudata to deliver "Confidential Information," as defined by the contract, to Hemostemix.  (D.I. 36-1, Ex. A ¶ 6).  "Confidential Information" is defined as:

---

[2] I think the Delaware Supreme Court's holding in connection with the elements of the offense for the analogous tort of tortious interference with prospective business opportunities has the "without justification" element, although stated differently:

> A "showing of deliberate interference with a prospective business opportunity requires (a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner."

*DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. 1981)

4

[A]ny non-public information that relates to the actual or anticipated business and/or products, research or development of the Company [Hemostemix], its affiliates or subsidiaries, or to the Company's, it affiliates' or subsidiaries' technical data . . . .

(*Id.* ¶ 3(A)). The "Amended and Restated License Agreement" between Hemostemix and Aspire contains a provision requiring Aspire to "provide [Hemostemix] with full access to all information in its possession or control relating to any clinical trials . . . within thirty (30) working days of receiving a request for such access." (D.I. 24-1, Ex. B ¶ 6.5).

Hemostemix asks me to find their actions justified "[b]ased solely on the unequivocal language in the contracts incorporated in the pleadings." (D.I. 79 at 15). While normally justification is a fact-intensive inquiry, under these unusual circumstances, I agree with Hemostemix.

Aspire has pled no facts that can support the element of lack of justification. The facts pled by Aspire, considered in light of the contracts themselves, establish that Hemostemix took the actions a party normally takes when faced with what it feels is a breach of contract. In this case, there are conflicting agreements and conflicting claims to the data. Hemostemix asserted its rights based on a facially reasonable interpretation of the contracts at issue. The contracts themselves confirm that Hemostemix's claims are not baseless. As Hemostemix argues, "both Aspire and Accudata have express contractual responsibilities to provide the clinical trial data to Hemostemix on demand: Aspire's obligations arise under the Amended and Restated License Agreement; Accudata's obligation arises under the Hemostemix-Accudata consulting agreement." (D.I. 82 at 7 (citations omitted)).

To be sure, these contracts are contested by the parties. At this stage, I am not resolving the merits of the parties' claims. The question is whether Aspire has stated a claim that Hemostemix acted without justification.

Hemostemix argues that its actions fall under the good faith defense to tortious interference. (D.I. 79 at 13).  Defenses are normally not considered on a motion to dismiss, but "an affirmative defense may be raised on a 12(b) (6) motion if the predicate establishing the defense is apparent from the face of the complaint." *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978) (considering a statute of limitations defense); *see also Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (noting that the affirmative defense of qualified immunity "will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." (quotations omitted)).  In this case, the elements of the claim require the Aspire to plead that Hemostemix's actions were "without justification."  Thus, while the good faith defense, as enumerated in the Restatement (Second) of Torts § 773, is somewhat analogous to the issue of whether Aspire has alleged that Hemostemix acted without justification, my analysis rests upon the elements of the claim itself.

Delaware follows Section 773 of the Restatement (Second) of Torts, which provides a defense to tortious interference claims.  *Redbox Automated Retail LLC v. Universal City Studios LLLP*, 2009 WL 2588748, at * 6 (D. Del. Aug. 17, 2009).  Under the Restatement,

> One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

Restatement (Second) of Torts § 773.

In this case, Hemostemix has an interest in the clinical trial data and Midpoint Analysis under its contracts with Accudata and Aspire.  Aspire argues that Hemostemix has failed to show that it acted using "appropriate means," as required by Section 773. (D.I. 80 at 7).  For instance, the counterclaim alleges that Hemostemix misrepresented the enforceability of the contracts.

6

(Counterclaim ¶¶ 22, 31). Hemostemix responds, "Hemostemix sending Accudata a letter demanding that it comply with its contractual obligations is, as a matter of law, protected by the 'assertion of bona fide claim' defense." (D.I. 82 at 8). Hemostemix analogizes to the first illustration of Section 773:

> A enters into a contract to buy Blackacre from B. C honestly believes that he has a right of way over Blackacre. With knowledge of the contract, C in good faith informs A of his interest and threatens to enforce it by legal proceedings if, as and when the owner of Blackacre should deny his claim. A thereupon refuses to perform his contract with B. C's interference is not improper under the rule stated in this Section.

Here, Aspire contracted with Accudata to analyze the clinical trial data and perform a Midpoint Analysis. Hemostemix believed it had a right to the data and Midpoint Analysis under its contract with Accudata. When Accudata refused to deliver the data to Hemostemix, Hemostemix demanded delivery under the contract, threatened to sue, and then did sue.

The facts Aspire has pled merely reflect assertion of a legal claim. The contracts themselves suggest that the claim was made in good faith. Aspire's allegations of misrepresentation are conclusory and insufficient to plausibly show that Hemostemix used improper means. Thus, I find that Aspire has failed to plead that Hemostemix acted without justification.

### B. Injury

Hemostemix also argues that Aspire has failed to show injury. Aspire's counterclaim describes its injury as the breach of contract itself:

> As a direct and proximate result of Hemostemix's intentional and unjustified interference, Accudata breached the Aspire-Accudata Contractor Agreement by, for example, failing to not retain copies of the documents provided by Aspire, including the clinical trial data and the Midpoint Analysis pursuant to the Aspire-Accudata Contractor Agreement.

(Counterclaim ¶ 33).

Aspire claims that contractual breach is "a legally recognized injury for a tortious interference claim." (D.I. 80 at 5). In support, Aspire cites *eCommerce Indus., Inc. v. MWA Intelligence, Inc.*, 2013 WL 5621678, at *50 (Del. Ch. Sept. 30, 2013). I do not think *eCommerce* supports Aspire's position. The *eCommerce* court simply described tortious interference damages as a confluence of contracts and torts damages:

> The traditional measure of damages is that which is utilized in connection with an award of compensatory damages, whose purpose is to compensate a plaintiff for its proven, actual loss caused by the defendant's wrongful conduct. In contract, the remedy is calculated to compensate the non-breaching party for the loss of the benefits of its bargain (i.e., the benefit it would have received had the contract been performed). In tort, the remedy is calculated to make the injured party whole, by compensating it for the harm suffered due to the tortfeasor's wrongful act. In a tortious interference with contract case, these two measures of damages might coincide, as the harm suffered by the tort victim due to the tortfeasor's wrongful act is often the loss of the benefits of its bargain.

*Id.* at 50 (citations omitted). This confirms that damages are compensatory. As Hemostemix points out, the *eCommerce* "claimant had actually suffered a loss in the form of lost profits." (D.I. 82 at 5). Aspire has not produced a single tortious interference case where the sole injury was a contractual breach absent compensatory damages. The Restatement (Second) of Torts talks about liability "for the pecuniary loss resulting" from failure to perform the contract. § 766. The comments confirm, "The cause of action is for pecuniary loss resulting from the interference." § 766 cmt. t.

Breach and injury are separate elements; Aspire must plead both to state a claim. *See Goldman v. Pogo.com, Inc.*, 2002 WL 1358760, at *8 (Del. Ch. June 14, 2002) ("A claim of tortious interference with a contractual right requires, *inter alia,* a contract, a breach of that contract, and an injury."). Here, Aspire has pled neither loss nor injury. Aspire has the data and the Midpoint Analysis. Aspire has not pled pecuniary injury flowing from Accudata's retention of that data, which has been court-ordered since July 21, 2020.

In its briefing, Aspire also asserts that litigation costs are a form of injury. (D.I. 80 at 5). Hemostemix replies, "To allow a party to file a claim for tortious interference with contract, and cite as its only injury the cost of filing the claim, would effectively eliminate that element of the tort." (D.I. 82 at 5). I agree with Hemostemix. The injury cannot be litigation costs in the very action the tortious interference claim is filed.

Thus, I find that Aspire has failed to plead an injury, which is fatal to its tortious interference claim.

## IV.   CONCLUSION

An appropriate order will issue.